**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Terry A. Jones,<br><br>                               Plaintiff,<br><br>             -v-<br><br>Brookhaven Science Associates, LLC,<br><br>                          Defendant. | 2:23-cv-04194<br>(NJC) (ARL) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, District Judge:

Plaintiff Terry A. Jones ("Jones") brings this action against her employer, Defendant Brookhaven Science Associates, LLC ("Brookhaven"), alleging racial discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and seeking damages and equitable relief. (Am. Compl., ECF No. 5.) Brookhaven has moved to dismiss all claims in the Amended Complaint for failure to state a claim. (Mot. to Dismiss, ECF No. 16.)

For the reasons set forth below, Brookhaven's Motion to Dismiss is granted as to Jones's racial discrimination claim, one part of Jones's retaliation claim, and the racially hostile work environment claim. The Motion to Dismiss is denied as to Jones's retaliation claim and claim of a retaliatory hostile work environment.

**FACTS**

To evaluate Brookhaven's Motion to Dismiss, I accept as true all well-pled allegations in the Amended Complaint and draw all reasonable inferences in favor of Jones. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 318 n.2 (2d Cir. 2021).[1]

Jones is a Black woman and has worked for Brookhaven, a facility that conducts research for the United States Department of Energy, since 1984. (Am. Compl. ¶¶ 6–7, 10, 12.) Since the mid-1990s, she has worked as a Senior Office Assistant/Administrative Assistant in Brookhaven's Creative Resources Department. (*Id.* ¶ 15.) Throughout the course of Jones's career with Brookhaven, Jones has "successfully performed all the necessary and essential functions of her position." (*Id.* ¶ 16.)

During the COVID-19 pandemic, Brookhaven closed its on site services for three months and Jones worked remotely during that time. (*Id.* ¶ 41.) Brookhaven resumed on site services in or around June 2020. (*See id.* ¶ 17.) In late June 2020, Jones completed a form certifying that she had underlying health conditions. (*Id.*) Because of this certification, Brookhaven permitted Jones to work remotely for up to ten days. (*Id.* ¶¶ 17–18.) While working remotely, Jones received a letter from her supervisor, Richard Backofen ("Backofen"), directing her to return to on site work. (*Id.* ¶ 21.) Jones returned to the office on July 6, 2020. (*Id.* ¶ 22.)

During a department meeting the following day, on July 7, 2020, Backofen informed Jones that "four (4) of her similarly situated White coworkers, Jen Abramowitz, Lena Belyavina, Tiffany Bowman, and Lisa Jansson, would continue to work remotely on a rotation schedule,"

---

[1] Excerpts from the Amended Complaint are reproduced here exactly as they appear in the original. Errors in spelling, punctuation or grammar will not be corrected or noted. Unless otherwise indicated, case quotations omit all internal quotation marks, brackets, alterations, and citations.

which involved one day per week of in-person work and remote work for the remaining four workdays. (*Id.* ¶¶ 23–24.) Jones "was the only Black/African American female in her department that was not permitted to work remotely on a rotation schedule." (*Id.* ¶ 25.)[2]

A.  Supervisor Backofen's Description of the on Site Resposibilies for Jones's Role

Jones approached Backofen that same day, on July 7, 2020, asked him why her coworkers had been granted remote work assignments, and requested a remote work position "consistent with" her white coworkers. (*Id.* ¶¶ 26–27.) Backofen replied that Jones could not work remotely because she was responsible for pulling photography negatives from the file room, whereas "ninety-nine percent of [her coworkers'] work could be completed remotely." (*Id.* ¶¶ 27–28.) According to the Amended Complaint, ninety-nine percent of Jones's position as a Senior Office Assistant is "performable in a remote setting," and Jones informed "Backofen that the photography negatives are pulled on an 'as-needed' basis" and can be accessed remotely from an online archive. (*Id.* ¶¶ 20, 28.)

After speaking with Jones on July 7, 2020, Backofen stated that he would speak with Brookhaven's Deputy Director for Stakeholder Relations, Peter Genzer ("Genzer"), about Jones's request. (*Id.* ¶ 30.)

Two days later, on July 9, 2020, Backofen informed Jones that she was not permitted to work remotely, stating that Jones was "needed onsite to speak with customers." (*Id.* ¶¶ 31–32.) Jones advised Backofen that speaking with customers had not been a part of Jones's position for

---

[2] The Amended Complaint suggests that other Black/African American women in Jones's department were permitted to work remotely on a rotation schedule, but does not provide supporting facts. (*See* Am. Compl. ¶ 25.)

many years, and that Brookhaven's telephone message directed customers to speak specifically with Backofen. (*Id.* ¶¶ 33–34.) Backofen allegedly responded: "I just want you here." (*Id.* ¶ 35.)

Backofen later informed members of the human resources department that Jones's position "required photography negatives . . . to be pulled and re-filed onsite" and required her to be on site "for timecard distribution." (*Id.* ¶¶ 55, 59; *see also id.* ¶¶ 45, 48.) The Amended Complaint alleges that if Jones "was not present to pull a negative photograph, [her] coworker . . . was available to pull the photograph" and that "Copy Services was responsible for the printing and distribution of timecards among employees." (*Id.* ¶¶ 57, 60.) It further alleges that employees did "hand[] in completed timesheets to [Jones]," unless they were working remotely, in which case they would send time cards electronically to Backofen or, if Backofen was absent, to Jones. (*Id.* ¶ 61.)

Backofen also told members of the human resources department that Jones's position required her to be on site "to receive and distribute paper mail." (*Id.* ¶ 62; *see also id.* ¶¶ 45, 48.) The Amended Complaint alleges that this duty was "only required on Tuesday and Thursday," and that Jones requested a rotating remote work schedule, so that she could perform this duty on the days she was on site. (*Id.* ¶ 63.) Backofen told members of the human resources department that Jones's position also required her to be on site "to print and process vendor invoices for payment." (*Id.* ¶ 64; *see also id.* ¶¶ 45, 48.) The Amended Complaint alleged that this claim was "false and this duty was performed electronically." (*Id.* ¶ 64.)

B.  <u>Conversations with Peter Genzer, Deputy Director for Stakeholder Relations</u>

On July 10, 2020, Jones contacted Genzer and asked him why he had denied her request for a remote work schedule similar to the schedules of her four "similarly situated" white coworkers. (*Id.* ¶ 36.) Genzer allegedly responded that he gave those four coworkers remote

4

work assignments because "he felt" that they "were not properly social distancing." (*Id.* ¶ 37.) In response, Jones told Genzer that she felt unsafe working in the office for several reasons:

- it was difficult to keep a social distance from others because "she worked in a walkthrough office space that other employees entered and exited through during the workday" (*id.* ¶ 38);

- "she was required to share a common printer with other employees who did not abide by the mask guidelines" (*id.* ¶ 39); and

- "she had serious underlying health conditions that made the work environment unsafe for her" (*id.* ¶ 40).

Jones also informed Genzer that she had worked remotely for three months when Brookhaven closed its on site services. (*Id.* ¶ 41.) Genzer did not respond to these comments. (*Id.* ¶ 42.)

C. Brookhaven's Internal Investigation

On July 15, 2020, Jones emailed Brookhaven's Site Manager, Robert Gordon ("Gordon"), asking for a response to her request to work remotely on a rotation schedule. (*Id.* ¶ 43.) Gordon offered to speak with Brookhaven's leadership to reconsider Jones's request. (*Id.* ¶ 44.) After this exchange, Brookhaven's Senior Human Resources Manager, Joanne Williams ("Williams") told Jones that she would "turn the complaint over to an investigating team to conduct an investigation." (*Id.* ¶ 45.)

A member of the investigation team reached out to Jones, but asked "very few questions about her remote work request" and did not ask her any follow-up questions. (*Id.* ¶¶ 51–52.) The investigation team allegedly interviewed certain employees, including Backofen and Genzer, but not others who could have confirmed that Jones was able to perform her work remotely. (*Id.* ¶¶ 51, 53, 55, 65.)

Jones was "kept out of the loop during" the investigation. (*Id.* ¶ 52.) Although the investigation concluded over the summer, Jones was not informed about its outcome until mid-October of 2020. (*Id.* ¶¶ 52, 68.) On October 14, 2020, Williams informed Jones that the investigation had concluded over the summer and that the result of the investigation was "not in her favor." (*Id.* ¶¶ 68, 70.)

      D.  <u>Additional Safety Concerns</u>

In addition to the safety concerns that Jones expressed to Genzer on July 10, 2020, Jones's workspace also had poor air circulation and mold, making the space "further . . . hazardous and unsafe, especially during the COVID-19 pandemic." (*Id.* ¶ 66.) In early October of 2020, Jones "was rushed to move into another building" at Brookhaven. (*Id.* ¶ 67.)

      E.  <u>EEOC Charge</u>

On October 16, 2020, after learning of the result of Brookhaven's internal investigation into her request for remote work, Jones filed a charge of racial discrimination with the Equal Opportunity Employment Commission ("EEOC"). (*Id.* ¶ 71.)

On November 24, 2020, Gordon emailed Jones about her remote work request, stating that the work she performed was required to be conducted in the office, that Brookhaven "had communicated this to [her]," and that Brookhaven "considered the matter resolved." (*Id.* ¶ 73.) Jones responded to this email stating that she was "not being treated equal to her similarly situated coworkers and the investigation into her remote work request was not thorough or fairly conducted." (*Id.* ¶ 74.)

In early 2021, Jones learned that another white coworker, Jessica, was permitted to work remotely some of the time even though her position required primarily on site work. (*Id.* ¶ 75.) On February 4, 2021, Jones was notified that she would also be given the option to work

remotely three days a week, with the expectation that she would work in the office on Mondays and Fridays and that she would be required to work in the office if she was called for in-office work. (*Id.* ¶¶ 76–77.) Jones was informed that she would only be permitted to work remotely under these conditions if she withdrew her EEOC charge with prejudice. (*Id.* ¶ 78.) Jones responded that she was not willing to withdraw her EEOC charge because she was not being treated the same as her white coworkers, who were not required to be on call during their remote days. (*Id.* ¶¶ 80–81.)

F.   <u>Alleged Retaliatory Acts</u>

The Amended Complaint alleges that "[s]ince engaging in protected activity and reporting the discrimination she experienced based on her race," Jones has been subject to "multiple incidents in the workplace to intimidate and harass [her] in retaliation" for reporting the discrimination she experienced. (*Id.* ¶ 81.)

First, the Amended Complaint alleges that Backofen "increased his discriminatory and harassing behavior" between 2021 and 2022. (*Id.* ¶ 82.) The Amended Complaint alleges that Backofen took the following retaliatory actions during this timeframe:

- Backofen assigned "unnecessary work" to Jones, "such as pulling photography negatives in person when [they] were already available in the online archives" (*id.* ¶ 83);

- he "frequently stood over [Jones] as she worked" (*id.* ¶ 84);

- he "frequently criticized [Jones's] work and stated she did not know what she was doing" (*id.* ¶ 85); and

- he "would look at his watch to monitor [Jones's] time when she left and returned from a lunch break or went to the bathroom" (*id.* ¶ 86).

Backofen did not engage in similar conduct toward any of the white coworkers whom Jones alleges are "similarly situated" to her. (*Id.* ¶¶ 83–86.) During this time, Jones complained

to the EEOC that she was experiencing retaliation for her EEOC charge, and she alleges that "[u]pon information and belief," the EEOC contacted Brookhaven in response to her EEOC charge. (*Id.* ¶¶ 87–88.)

Second, the Amended Complaint alleges that a coworker, Jerry Geata ("Geata") retaliated against Jones for her EEOC claim. (*Id.* ¶¶ 89–97.) The Amended Complaint alleges "[u]pon information and belief," that Backofen showed Jones's EEOC charge to Geata and instructed him to retaliate against Jones for that complaint. (*Id.* ¶ 89.) The Amended Complaint alleges that Geata took the following retaliatory actions:

- on February 28, 2022, Geata "refused to acknowledge" Jones when she said "Good Morning" while walking to her office (*id.* ¶ 90);

- on March 1, 2022, and again on March 2, 2022, Geata "slammed a door in [Jones's] face when she entered a common space" (*id.* ¶¶ 91–92); and

- on March 4, 2022, Geata "aggressively left the copy room" when Jones entered the room, and "slammed the door angrily on his way out" (*id.* ¶ 93).

On March 8, 2022, Jones spoke with an individual named "Raynor" about Geata, and Raynor stated he would speak to Geata. (*Id.* ¶ 94.) On March 9, 2022, when Jones entered a common workspace, she "almost ran into Geata because they did not see one another approaching," but did not actually make physical contact with Geata. (*Id.* ¶ 96.) The next day, Geata made a report to the union representative about the incident, falsely alleging that Jones "intentionally attempted to knock Geata over." (*Id.* ¶ 97.)

 "After reporting the discrimination she faced," Jones "was isolated in the workplace" and "multiple coworkers were no longer speaking to [her]." (*Id.* ¶ 98.)

## PROCEDURAL HISTORY

Jones received a right to sue letter from the EEOC on March 17, 2023. (Am. Compl.

¶ 100.) On July 7, 2023, Jones initiated this action by filing the original complaint pro se. (ECF

No. 1.) On July 11, 2023, counsel entered a notice of appearance on behalf of Jones, and on

August 29, 2023, Jones filed the Amended Complaint through counsel. (ECF Nos. 4–5.)

The Amended Complaint, which is the operative complaint in this action, brings claims

for damages against Brookhaven for racial discrimination and retaliation in violation of Title

VII.[3] (*Id.* at 1, 12–13.) On November 9, 2023, Brookhaven filed a letter requesting a pre-motion

conference in anticipation of filing a motion to dismiss, which Jones opposed. (ECF Nos. 11,

12.) I issued a briefing schedule. (Elec. Order, Dec. 5, 2023.) On February 23, 2024, Brookhaven

filed the fully-briefed Motion to Dismiss, which includes: Brookhaven's Memorandum in

Support of the Motion to Dismiss (Def.'s Br., ECF No. 16-3); Jones's Memorandum in

Opposition to Brookhaven's Motion (Pl.'s Opp'n, ECF No. 16-5) and Brookhaven's Reply

(Def.'s Reply, ECF No. 17).

---

[3] On September 6, 2024, Jones filed a letter stating that Jones was voluntarily dismissing any claims for injunctive, declaratory, or equitable relief set forth in the Amended Complaint. (ECF No. 19.) Brookhaven has not filed an answer or a motion for summary judgment in this action. Therefore, any claims in the Amended Complaint for injunctive, declaratory, or other equitable relief are dismissed. *See* Fed. R. Civ. P. 41(a)(1)(i) ("[T]he plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment. . . ."). In *Burgos v. City of New York*, Judge Oetken noticed that there "appears to be some disagreement among courts in this Circuit regarding whether this rule permits only the voluntary dismissal of an entire action, or also permits the voluntary dismissal of individual claims." 2019 WL 1299461, at *2 n.4 (S.D.N.Y. Mar. 21, 2019). I am persuaded, however, by the analysis of Judge Oetken, who interpreted Rule 41(a)(1)(A) to permit a plaintiff to withdraw an individual claim. *See id.* (citing *Azkour v. Haouzi*, 3012 WL 3972462, at *3 (S.D.N.Y. 2013)).

## JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Jones's claims arise under a federal statute, Title VII, 42 U.S.C. § 2000e-2 and -3. The Court also has personal jurisdiction over Brookhaven, which is located in Suffolk County, in the Eastern District of New York.

Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391(b)(2) because the alleged events took place in Suffolk County, which is in the Eastern District of New York. (*Id.* ¶¶ 1, 4.)

## DISCUSSION

### I.   Failure to Exhaust

As an initial matter, Brookhaven argues for dismissal of the allegations in the Amended Complaint pertaining to events that occurred after October 16, 2020. (Def.'s Br. at 13 n.4.) According to Brookhaven, Jones failed to exhaust administrative remedies as to these alleged events because they were not the subject of the EEOC charge that Jones filed on October 16, 2020, and were not included in the EEOC's right-to-sue letter. (*Id.*) In response, Jones argues that the allegations concerning post-October 16, 2020 conduct are properly taken into account when assessing the plausibility of her claims because the alleged conduct is "reasonably related" to the racial discrimination claim Jones exhausted through the filing of her EEOC charge. (Pl.'s Opp'n at 16–17.)

Brookhaven only raises this exhaustion argument in a footnote in its brief. (Def.'s Br. at 13 n.4.) Courts are "under no obligation" to consider arguments that "appear only in footnotes" because they are "not properly raised." *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 314 (S.D.N.Y.), *aff'd*, 626 F. App'x 20 (2d Cir. 2015); *see also Breuninger v. Williams*, No. 20-cv-7033, 2023

WL 4211030, at *5 n.3 (S.D.N.Y. June 27, 2023) (declining to consider an argument raised only

in a footnote); *Sec. & Exch. Comm'n v. Allaire*, No. 03-cv-4087, 2019 WL 6114484, at *3 n.1

(S.D.N.Y. Nov. 18, 2019) ("An argument mentioned only in a footnote is not adequately raised

and need not be considered."), *aff'd sub nom. Sec. & Exch. Comm'n v. Romeril*, 15 F.4th 166 (2d

Cir. 2021). Even if considered, however, Brookhaven's exhaustion argument is without merit

because the facts alleged to have occurred after Jones filed her EEOC charge are reasonably

related to that charge and are thus deemed exhausted under Second Circuit precedent.

      Generally, a plaintiff may not bring a Title VII claim in federal court without first

exhausting administrative remedies by filing an EEOC charge. *Duplan v. City of New York*, 888

F.3d 612, 621–22 (2d Cir. 2018). The Second Circuit has recognized, however, that "in certain

circumstances it may be unfair, inefficient, or contrary to the purposes of [Title VII] to require a

party to separately re-exhaust new violations that are 'reasonably related' to the initial claim." *Id.*

at 622; *see also Buon v. Spindler*, 65 F4th 64, 77 (2d Cir. 2023) ("[C]laims that were not asserted

before the EEOC may be pursued in a subsequent federal court action if they are reasonably

related to those that were filed with the agency.").

      "A claim is considered reasonably related" to claims in an EEOC charge "if the alleged

conduct would fall within the scope of the EEOC investigation which can reasonably be

expected to grow out of the charge that was made." *Zarda v. Altitude Express, Inc.*, 883 F.3d

100, 110 n.5 (2d Cir. 2018), *aff'd sub nom. Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020). The

Second Circuit has established that where a "plaintiff has already filed an EEOC charge," courts

"assume[] that the exhaustion requirement is also met for *a subsequent claim alleging retaliation*

by an employer against [that] employee *for filing an EEOC charge*." *Duplan*, 888 F.3d, at 622

(emphasis supplied); *see also Olivieri v. Stifel, Nicolaus & Co., Inc.*, --- F.4th ---, 2024 WL

3747609, at *15 (2d Cir. Aug. 12, 2024) ("This Court has recognized that retaliation for reporting discrimination is reasonably related to the underlying discrimination, such that a plaintiff who exhausts a discrimination claim with the EEOC may also pursue a claim for retaliation.").

Jones filed an EEOC charge of racial discrimination on October 16, 2020, and received a right-to-sue letter for the allegations in that charge on March 17, 2023. (Am. Compl. ¶¶ 71, 100.) The Amended Complaint alleges that after October 16, 2020:

- Gordon reiterated Brookhaven's denial of Jones's remote work request, and Jones again complained that she was being treated differently than her white coworkers (*id.* ¶¶ 73, 75);

- Brookhaven offered Jones a remote work schedule on the condition that she withdraw her EEOC charge (*id.* ¶¶ 76–78);

- Jones learned that another white coworker was permitted to work remotely (*id.* ¶ 75); and

- Jones was subjected to "multiple incidents in the workplace to intimate and harass [her] in retaliation" for reporting the discrimination she experienced (*id.* ¶ 81; *see also id.* ¶¶ 82–98 (detailing the alleged retaliatory acts that Jones's experienced)).

Each of the allegations concerning post-October 16, 2020 conduct is reasonably related to the EEOC charge that Jones filed on October 16, 2020, because it concerns either alleged retaliation for the filing of that EEOC charge or alleged conduct falling within the scope of the EEOC investigation. *See Olivieri*, 2024 WL 3747609, at *15; *Duplan*, 888 F.3d at 621–22; *Zarda*, 883 F.3d at 111 n.5. Accordingly, I find that the exhaustion requirement is met for the alleged post-October 16, 2020 conduct, and I consider that alleged conduct in evaluating Brookhaven's Motion to Dismiss.

## II.      Failure to State a Claim

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Green v. Dep't of Educ. of the City of New York*, 16 F.4th 1076–77 (2d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accepts all factual allegations as true" and "draws all reasonable inferences in favor of the plaintiffs . . . ." *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023). While "detailed factual allegations" are not required, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

### a.    Racial Discrimination Claim

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). At the pleading stage, a plaintiff can establish a Title VII discrimination claim by alleging (1) that she "is a member of a protected class," (2) that she "was qualified" for her position, (3) that she "suffered an adverse

13

employment action," and (4) facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon*, 65 F.4th at 79.

Brookhaven moves to dismiss Jones's Title VII racial discrimination claim for two independent reasons. (Def.'s Br. at 8.) First, Brookhaven argues that the Amended Complaint fails to allege any adverse employment action that Brookhaven took against Jones, which could support a Title VII race discrimination claim. (*Id.* at 9–15.) Second, Brookhaven argues that the Amended Complaint fails to allege facts that raise an inference of discrimination on the basis of Jones's race. (*Id.* at 15–16.)[4] Jones argues that Brookhaven's denial of her request to work remotely was an adverse employment action under Title VII and that the Amended Complaint raises an inference of discrimination by alleging that Brookhaven treated Jones, a Black woman, differently than four white coworkers, who were permitted to work remotely. (Pl.'s Opp'n at 10–13.)[5]

Jones has failed to plausibly allege a racial discrimination claim because the Amended Complaint fails to allege an adverse employment action. Because this defect alone requires

---

[4] Brookhaven does not dispute that the Amended Complaint alleges that Jones is a member of a protected class and was qualified for her position. (*See* Brookhaven's Br. at 8–16.)

[5] In its brief, Brookhaven identifies additional actions that Brookhaven and its employees allegedly took after denying Jones's request for remote work and argues that none of them constitute an adverse employment action that could support a racial discrimination claim. (Def.'s Br. 12–15.) The acts at issue concern Brookhaven's investigation into Jones's remote work request, Brookhaven's offer of a remote work schedule in exchange for Jones's withdrawal of the EEOC charge, and Backofen and Geata's alleged treatment of Jones. (*Id.* at 12–14.) In her opposition brief, Jones abandons the argument that any of these actions constitute an adverse employment action supporting a Title VII racial discrimination claim by failing even to address Brookhaven's argument. *See* Pl.'s Opp'n at 10–13; *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) ("[W]hen a party fails adequately to present arguments in a brief, a court may properly consider those arguments abandoned . . . .") (citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004)); *see also Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 257 (2d Cir. 2024) (finding that a plaintiff "abandoned . . . claims" that she failed to argue in her opposition brief).

14

dismissal of the claim, I do not reach the issue of whether the facts in the Amended Complaint sufficiently alleged discriminatory intent as required to plead a plausible racial discrimination claim.

To qualify as an "adverse employment action" under Title VII, the employer's action toward the plaintiff must constitute a "materially adverse change in the terms and conditions of [the plaintiff's] employment." *Buon*, 65 F.4th at 79. For an employer's action to be a "materially adverse change in the terms and conditions of employment," it must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* The Second Circuit has found that adverse employment actions "include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.*

Before and since the COVID-19 pandemic, courts in the Second Circuit have generally found that the denial of an employee's request to work remotely does not constitute an adverse employment action under Title VII. *See Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11–12 (2d Cir. 2013) (finding that allegations that plaintiff was "not permitted to take advantage of an alternative work schedule that allowed periodic work from home" did not constitute an adverse employment action); *Thompson v. Shutterstock, Inc.*, No. 23-cv-4155, 2024 WL 2943813, at *8 (S.D.N.Y. June 10, 2024) (finding that an employer's denial of a request to work remotely was not, by itself, an adverse employment action under Title VII); *Williams v. PMA Cos.*, 564 F. Supp. 3d 32, 46 (N.D.N.Y. 2021) ("Defendant's denial of Plaintiff's request for remote work . . . is not an adverse employment action because it did not change the terms and conditions of Plaintiff's employment; it merely required him to continue to work from the . . . office . . . as he had been doing."); *Jean-Pierre v. Citizen Watch Co. of Am., Inc.*, No. 18-cv-

0507, 2019 WL 5887479, at *6 (S.D.N.Y. Nov. 12, 2019) ("[E]ven if Plaintiff were never permitted to work from home, such a restriction does not constitute an adverse employment action.").

One court in the Second Circuit, however, determined that in the context of the early months of the COVID-19 pandemic, the denial of the opportunity to work remotely from March to June 2020 could qualify as an adverse employment action for purposes of a Title VII racial discrimination claim. *See Gayles v. Roswell Park Cancer Inst. Corp.*, No. 22-cv-750, 2023 WL 6304020, at *4–6 (W.D.N.Y. Sept. 28, 2023). In *Gayles*, the plaintiff, a Black woman, alleged that her employer discriminated against her on the basis of race when it denied her request to work from home during the first three months of the COVID-19 pandemic in order to care for her ten-year-old son, who was at "high risk" due to a disability, but permitted white employees who were at high risk or had school-aged children remote work opportunities during the same period of time. *Id.* at *2. The employer told the plaintiff that she could not work remotely, but could take a "leave of absence" or use accrued paid leave to care for her son, and the plaintiff alleged that she accordingly used her paid time off for that purpose. *Id.* at *2–3. Ruling on the employer's motion to dismiss the complaint, the court found that the employer's denial of the plaintiff's remote-work request plausibly constituted a material change in the conditions of her employment "in the context of the COVID-19 pandemic when the ability to work remotely was intertwined with legitimate public and personal health and safety concerns." *Id.* at *4–5.

In line with the reasoning set forth in *Thompson* and *Williams*, the allegations of the Amended Complaint that Brookhaven denied Jones's request for a rotating remote work schedule fails to plead an adverse employment action that would support a Title VII racial discrimination claim. *See Thompson*, 2024 WL 2943813, at *8; *Williams*, 564 F. Supp. 3d at 46.

The Amended Complaint does not allege that the ability to work remotely on a periodic basis has ever been a condition of Jones's role as a Senior Office Assistant/Administrative Assistant at Brookhaven, or that Jones had ever worked remotely during the more than thirty years in which she served in this role prior to the onset of the COVID-19 pandemic in March 2020. (*See generally* Am. Compl.) By contrast, even viewing the allegations in the light most favorable to Jones and drawing all inferences in her favor, the Amended Complaint pleads that Jones was responsible for tasks that required her to be on site, including duties to pull and re-file photography negatives, receive and distribute mail, and receive employee timecards from employees working on site. (*Id*. ¶¶ 55–57, 59, 61–63.) For example, the Amended Complaint acknowledges that Jones is required to pull and re-file photography negatives on site, even as it alleges that Jones completes this task "as needed" and that a co-worker could perform her work for her if she were to work remotely. (*Id*. ¶¶ 56–57.) It also alleges that Jones's job responsibilities include receiving completed timecards from employees working on site, even though it alleges that Jones is not responsible for distributing timecards and only collects electronic timecards from staff working remotely when Backofen is absent. (*Id*. ¶¶ 60–61.) Finally, the Amended Complaint acknowledges that Jones's responsibilities include receiving and distributing paper mail on Tuesdays and Thursdays, even as it alleges that this task could be accommodated with a rotating remote work schedule. (*Id*. ¶¶ 62–63.)[6]

---

[6] The Amended Complaint also alleges that Jones's supervisors believe her on site job responsibilities include printing and processing vendor invoices, but that this work is actually handled electronically. (*Id*. ¶ 64.) Even accounting for this allegation and drawing all inferences in favor of Jones, the allegations of the Amended Complaint establish that Jones's responsibilities as a Senior Office Assistant/Administrative Assistant include handling tasks that must be completed on site, including pulling and re-filing photography negatives, distributing and processing the mail, and receiving timecards from employees working on site.

Thus, it is clear that the Amended Complaint alleges that Jones's responsibilities include duties that must be carried out on site at Brookhaven and does not allege that it was ever a condition of her role to work remotely or that she had ever worked remotely at Brookhaven prior to the onset of the COVID-19 pandemic. As a result, the Amended Complaint does not plausibly allege that Brookhaven's denial of Jones's request for remote work on a rotating schedule was "more disruptive than a mere inconvenience or an alteration of job responsibilities" such that it constituted a "materially adverse change in the terms and conditions of [her] employment." *Buon*, 65 F.4th at 79. The Amended Complaint does not allege that the denial of Jones's request for a new, rotating remote work schedule caused any demotion of her status, change in her wages or salary, change in any benefits as a part of the job, or diminishment in her job responsibilities. *See Thompson*, 2024 WL 2943813, at *8. The Amended Complaint thus fails to plead an adverse employment action as required for a plausible Title VII racial discrimination claim.

In opposing Brookhaven's Motion to Dismiss, Jones argues that I should apply the reasoning of the court in *Gayles* because the Amended Complaint alleges that Jones had safety concerns about working in the office in July 2020 during the COVID-19 pandemic. (Pl.'s Opp'n at 10–11.) This argument is unpersuasive for two reasons. First, the *Gayles* court reached a decision contrary to the weight of the authority in the Second Circuit, including cases decided during the pandemic. *See Thompson*, 2024 WL 2943813, at *8 (decided in 2024, analyzing claims that arose in part in 2020); *Williams*, 564 F. Supp. 3d at 46 (decided in 2021). Second, while courts in the Second Circuit have "held that exposing a worker to dangerous or extreme work conditions may constitute an adverse employment action in certain circumstances," *Todoverto v. McDonald*, No. 13-cv-4922, 2016 WL 3826281, at *11 (S.D.N.Y. July 7, 2016) (collecting cases), the court in *Gayles* did not address whether any allegations in the complaint

plausibly alleged that the denial of remote work exposed the plaintiff to dangerous working conditions related to the COVID-19 pandemic, *see Gayles*, 2023 WL 6304020. Instead, the court only generally referenced "legitimate public and personal health and safety concerns" related to the COVID-19 pandemic during the March to June 2020 timeframe at issue in that case. *Gayles*, 2023 WL 6304020, at *4–5.

The Amended Complaint does not plausibly allege that Brookhaven's denial of Jones's request for a rotating remote work schedule subjected her to dangerous or extreme work conditions. It alleges that Jones informed her supervisors that she had safety concerns about the office because: "she worked in a walkthrough office space that other employees entered and exited through during the workday," making it difficult to socially distance from other employees (Am. Compl. ¶ 38); "she was required to share a common printer with other employees who did not abide by the mask guidelines" (*id.* ¶ 39); and "she had serious underlying health conditions that made the work environment unsafe for her" (*id.* ¶ 40). The Amended Complaint also alleges that Jones's workspace had poor air circulation and mold, making the space "further . . . hazardous and unsafe, especially during the COVID-19 pandemic." (*Id.* ¶ 66.)

The Amended Complaint does not allege that Brookhaven failed to take any safety precautions to maintain a safe workspace during the COVID-19 pandemic. To the contrary, it alleges that Brookhaven: entirely closed its offices for three months during the COVID-19 pandemic (*id.* ¶ 41); instructed certain employees who were not socially distancing to work remotely (*id.* ¶ 37), thereby demonstrating that Brookhaven had a social distancing policy; and moved Jones out of an office building that had mold in a "rush[ed]" manner (*id.* ¶ 66). Viewing the allegations in the light most favorable to Jones and drawing all inferences in her favor, the Amended Complaint does not plausibly allege "dangerous or extreme work conditions" that can

constitute an adverse employment action in the context of a Title VII racial discrimination claim. *Todoverto*, 2016 WL 3826281, at *11 (finding that an employer's "indifference to safety warnings did not constitute an employment action"); *Dhar v. NYC Dep't of Transp.*, No. 10-cv-5681, 2014 WL 4773965, at *7 (E.D.N.Y. Sept. 24, 2014) (finding that an employee's participation in an inspection in unsafe conditions did not constitute an adverse employment action), *aff'd*, 630 F. App'x 14 (2d Cir. 2015); *cf. McAllister v. Metro. Transit Auth.*, No. 13-cv-2060, 2013 WL 4519795, at *6 (E.D.N.Y. Aug. 26, 2013) (allegations that an employee was transferred to a work location without functioning air conditioning, where he was subject to extreme temperatures which led him to suffer heat exhaustion and required his hospitalization, sufficiently alleged an adverse employment action).

The Amended Complaint thus fails to plausibly allege that Brookhaven's denial of Jones's request for remote work on a rotating schedule constituted an adverse employment action as required to plead a Title VII racial discrimination claim. I therefore do not reach Brookhaven's argument that the Amended Complaint fails to allege that Jones's four white coworkers who were permitted remote work schedules were similarly situated to her, and thus fails to raise a plausible inference of discriminatory intent as required to plead a Title VII racial discrimination claim.[7]

---

[7] On reply, Brookhaven asserts that Jones's opposition brief relies on facts not alleged in the Amended Complaint to argue that Jones is similarly situated to these white coworkers, and asks this Court to disregard these new allegations. (Def.'s Reply at 2.) I do not reach this issue because the Title VII racial discrimination claim is dismissed for failure to plead an adverse action.

### b. Retaliation Claim

Under Title VII's antiretaliation provision, it is unlawful for an employer to "discriminate against an employee because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Carr v. New York City Transit Auth.*, 76 F.4th 172, 178 (2d Cir. 2023) (citing 42 U.S.C. § 2000e-3(a)). A plaintiff pleading a Title VII retaliation claim must plead factual allegations that, if true, "demonstrate that (1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) [the plaintiff] was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Id.* at 180.

Brookhaven argues that Jones has failed to state a Title VII retaliation claim for two reasons. (Def.'s Br. at 16–17.) First, Brookhaven contends that even though a Title VII retaliation claim covers more employer conduct than a discrimination claim, Jones fails to plead any plausible retaliatory adverse employment action. (*Id.*) Second, Brookhaven asserts that even if Jones sufficiently alleged a retaliatory adverse employment action, she fails to allege that such action was causally connected to her protected activity. (*Id.*) Jones argues in opposition that Backofen's conduct toward her and Brookhaven's offer of remote work contingent on Jones's withdrawal of her EEOC charge constitute adverse employment actions that support a plausible Title VII retaliation claim. (Pl.'s Opp'n at 22.)[8] Jones also argues that she has pled a causal

---

[8] In her discussion of the causation prong of the Title VII retaliation claim, Jones asserts for the first time in her opposition brief that Brookhaven's "intentional[]" failure to inform her "of the timeline or conclusion" of its internal investigation into Jones's complaint was a "retaliatory action within itself." (Pl.'s Opp'n at 20–22.) Jones fails to present any argument as to why such conduct constitutes an "adverse action" in the context of a Title VII retaliation claim or what factual allegations suggest that this action was causally related to Jones's protected activity. (*Id.*)

connection between her protected activity and these adverse actions by pleading that these actions occurred "close in time" after she engaged in protected activities and "by showing that she was subjected to disparate treatment for engaging in protected activity." (*Id.*) In her opposition brief, Jones also asserts that the Amended Complaint alleges that the adverse actions taken "as a result of her protected activity"—including the conduct of both Backofen and Geata—"in the aggregate, amounted to a hostile work environment." (*Id.* at 24.)[9]

The Amended Complaint alleges two adverse actions that support a plausible retaliation claim: (1) Backofen's aggregate conduct towards Jones between 2021 and 2022, and (2) Brookhaven's February 2021 request that Jones withdraw her EEOC charge in exchange for the ability to work remotely three days per week. Moreover, the Amended Complaint alleges sufficient facts suggesting that these adverse actions were causally connected to at least some of Jones's protected activity, namely her October 2020 EEOC charge, and her December 2020 email to Gordon alleging that she was being treated differently than her white coworkers. The Amended Complaint's allegations concerning Geata's conduct toward Jones in February and March of 2022, however, even when considered in the aggregate, do not allege any adverse employment action that would support a plausible Title VII retaliation claim.

---

Jones has forfeited this argument by referring to it in only a perfunctory manner and failing to provide any further argumentation to support her conclusion that this action was a "retaliatory action." *See In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023) (recognizing that where a party refers to an issue in only "a perfunctory manner, unaccompanied by any effort at developed argumentation, it must be deemed waived[]—or, more precisely, *forfeited*").

[9] As discussed below, I analyze the allegations that Jones has described as a "hostile work environment" claim with Jones's claim of Title VII retaliation, because "[a] claim of 'retaliatory hostile work environment' must . . . be treated identically to a claim that an employer took multiple retaliatory actions that were, in the aggregate, "materially adverse." *Carr*, 76 F.4th at 180; *see also infra* Section III(B).

A.  Jones's Protected Activities and Brookhaven's Knowledge of Those Activities

The Amended Complaint alleges that Jones engaged in activity that was protected under

Title VII on five separate occasions between July 7, 2020 and December 1, 2020. (Pl.'s Opp'n at

19–20.) Specifically, it alleges that Jones engaged in the following protected activities:

- on July 7, 2020, Jones "approached Backofen and requested a remote work position consistent with her similarly situated White coworkers" (Am. Compl. ¶ 26);

- on July 10, 2020, Jones "contacted Genzer and asked why he did not approve her remote work request, as was provided to her similarly situated White coworkers" (*id.* ¶ 36);

- on July 15, 2020, Jones emailed Gordon "regarding her request to work remotely like her similarly situated White coworkers and requested the matter be addressed" (*id.* ¶ 43);

- on October 16, 2020, Jones filed a racial discrimination charge with the EEOC (*id.* ¶ 71); and

- on December 1, 2020, Jones responded to an email from Gordon, which reaffirmed that Brookhaven denied her remote-work request, by "stat[ing] that she was not being treated equal to her similarly situated coworkers and the investigation into her remote work request was not thorough or fairly conducted" (*id.* ¶ 74).[10]

Brookhaven does not dispute that these alleged activities are protected by Title VII or that

Brookhaven had sufficient knowledge of these activities. (Def.'s Br. at 16–17.)[11]

B.  Adverse Actions

Brookhaven first argues that the Amended Complaint fails to allege any adverse

employment actions that could support a claim of retaliation. (Def.'s Br. at 17.) In response,

---

[10] Jones does not argue that she engaged in any alleged protected activity after the December 1, 2020 email to Gordon. (*See* Pl.'s Opp'n at 19–20.)

[11] Brookhaven argues that the Amended Complaint does not sufficiently allege that Brookhaven knew about Jones's complaint to "Raynor" on March 8, 2022. (Def.'s Br. at 16.) In her opposition brief, Jones does not address this argument or otherwise show that this complaint constituted protected activity for the purpose of her Title VII retaliation claim. As a result, Jones abandons the argument that the allegation establishes Brookhaven's knowledge of her protected activities. (Pl.'s Opp'n at 19–20.) *See Moll*, 94 F.4th at 257; *see also Malik*, 841 F. App'x at 284.

Jones argues that the Amended Complaint alleges that Brookhaven offered Jones a partially remote work schedule in early 2021 in exchange for the withdrawal of her EEOC charge and that Backofen frequently critiqued and monitored Jones between 2021 and 2022.[12] (Pl.'s Opp'n at 20–21.) Jones also asserts that "as a result of" her protected activity, between July 2020 and March 2023, Jones has been "subjected to ongoing adverse actions during that same period" that amount to a hostile work environment, including, in the aggregate, the conduct of Backofen and her coworker Gaeta. (*Id.* at 24–25.)

In the context of a Title VII retaliation claim, "[t]he definition of 'adverse action' . . . is broader than in the antidiscrimination context." *Carr*, 76 F.4th at 179. An action is "materially adverse" for the purposes of a retaliation claim when the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 180 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (*"Burlington Northern"*). The Supreme Court explained in *Burlington Northern* that this is an objective standard in order to "avoid[] the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Burlington Northern*, 548 U.S. at 68–69; *see also Carr*, 76 F.4th at 180.

An action is not materially adverse, however, where it constitutes merely a "trivial harm[]," meaning a "petty slight[] or minor annoyance[] that often take[s] place at work and that

[12] Brookhaven identifies other allegations in the Amended Complaint and argues that they do not rise to the level of adverse employment actions for the purposes of a Title VII retaliation claim. (*See* Def.'s Br. at 17.) These include allegations that Brookhaven's investigation into Jones's internal complaints was flawed. (*Id.*) Jones does not argue in her opposition brief that any of this alleged conduct constitutes an adverse action that would support a Title VII retaliation claim. Therefore, Jones abandons this argument. *See Moll*, 94 F.4th at 257; *see also Malik*, 841 F. App'x at 284.

all employees experience." *Burlington Northern*, 548 U.S. at 68; *see also Moy v. Perez*, 712 F.

App'x 38, 40 (2d Cir. 2017) (citing *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d

11, 25 (2d Cir. 2014)); *see also Millea v. Metro-N. R. Co.*, 658 F.3d 154, 165 (2d Cir. 2011)

("Petty slights, minor annoyances, and simple lack of good manners will not give rise to

actionable retaliation claims.") (citing *Burlington Northern*, 548 U.S. at 68). In *Burlington*

*Northern*, the Supreme Court explained that this determination is very context-specific, stating:

> The real social impact of workplace behavior often depends on a constellation of
> surrounding circumstances, expectations, and relationships which are not fully
> captured by a simple recitation of the words used or the physical acts performed.
> A schedule change in an employee's work schedule may make little difference to
> many workers, but may matter enormously to a young mother with school-age
> children. A supervisor's refusal to invite an employee to lunch is normally trivial,
> a nonactionable petty slight. But to retaliate by excluding an employee from a
> weekly training lunch that contributes significantly to the employee's professional
> advancement might well deter a reasonable employee from complaining about
> discrimination.

*Burlington Northern*, 548 U.S. at 69; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801

F.3d 72, 90 (2d Cir. 2015) (same); *see also Burlington Northern*, 548 U.S. at 68–69 ("We refer

to reactions of a *reasonable* employee because we believe that the provision's standard for

judging harm must be objective. An objective standard is judicially administrable. It avoids the

uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's

unusual subjective feelings."); *Carr*, 76 F.4th at 180.

"[Alleged acts of retaliation must be evaluated both separately and in the aggregate, as

even trivial acts may take on greater significance when they are viewed as part of a larger course

of conduct." *Rivera*, 743 F.3d at 25. The Second Circuit has instructed that a "retaliatory hostile

work environment" claim "must . . . be treated identically to a claim that an employer took

multiple retaliatory actions that were, in the aggregate, materially adverse." *Carr*, 76 F.4th at

180. A plaintiff may also bring a claim under Title VII alleging a *discriminatory* hostile work

environment by demonstrating that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 261 (2d Cir. 2023). In *Carr*, however, the Second Circuit held that the district court erred in analyzing a claim the plaintiff labeled a "*retaliatory* hostile work environment claim" under the "severe or pervasive" standard that governs hostile work environment claims based on pervasive discriminatory conduct. *Carr*, 76 F.4th at 180 (emphasis supplied). The Second Circuit directed courts to instead analyze a claim of multiple retaliatory actions in the aggregate just as they would analyze a single retaliatory action. Specifically, the Second Circuit instructed:

> Even if a plaintiff labels her retaliation claim as a "retaliatory hostile work environment" claim, courts should not consider whether the allegedly retaliatory actions meet the higher "severe and pervasive" standard. All that is relevant is whether the actions, taken in the aggregate, are materially adverse and would dissuade a reasonable employee from making a complaint of discrimination.

*Id.* at 181.

Here, Jones's opposition brief describes the Amended Complaint's allegations as pleading separate claims for retaliation and "hostile work environment" due to Jones's engagement in protected activities. (*See* Pl.'s Opp'n at 17, 23.) Because I must treat a retaliatory hostile work environment claim identically to a retaliation claim concerning multiple retaliatory actions, however, I analyze these claims together.

### i. *Remote Work Schedule Offered in Exchange for Jones's Withdrawal of her EEOC Charge*

The Amended Complaint alleges that on February 4, 2021, Brookhaven offered Jones the option to work remotely three days per week in exchange for withdrawing her EEOC charge with prejudice. (Am. Compl. ¶¶ 76–78.) The Supreme Court and Second Circuit have made clear that when determining whether an employer engaged in adverse action giving rise to a plausible

Title VII retaliation claim, courts must consider whether the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Carr*, 76 F.4th at 180 (citing *Burlington Northern*, 548 U.S. at 68). The Amended Complaint alleges that Brookhaven asked Jones to withdraw her EEOC charge in exchange for a schedule including three remote workdays per week. (Am. Compl. ¶¶ 76–78.) Because such a request "might have dissuaded a reasonable worker from making or supporting a charge of discrimination," the Amended Complaint sufficiently alleges an adverse action for the purpose of pleading a Title VII retaliation claim. *Carr*, 76 F.4th at 108; *Burlington Northern*, 548 U.S. at 68.

Brookhaven unpersuasively argues that an employer's request that an employee withdraw an EEOC charge does not constitute an adverse employment action for the purposes of a Title VII retaliation claim, relying on *During v. City University*, 01-cv-9584, 2005 WL 2276875, at *10 (S.D.N.Y. Sept. 19, 2005), and *Meckenberg v. N.Y.C. Off-Track Betting*, 42 F. Supp. 2d 359, 381 n.13 (S.D.N.Y. 1999). (Def.'s Reply at 6.) In *Meckenburg* and *During*, an employer's request that an employee withdraw an EEOC charge was not an adverse action for retaliation purposes because it did not cause a materially adverse change to the terms and conditions of the plaintiff's employment. *See Meckenberg*, 42 F. Supp. 2d at 381 n.13; *During*, 2005 WL 2276875, at *10. Both of these district court decisions were issued *before* the Supreme Court clarified that a more lenient standard governs the determination of an adverse action under Title VII's antiretaliation provision as compared to the determination of an adverse employment action required to plead a Title VII discrimination claim. Thus, neither *Meckenburg* nor *During* stands for the proposition that an employer's request that an employee withdraw an EEOC charge can never constitute an adverse action supporting a Title VII retaliation claim. *Cf. Carr*,

76 F.4th at 179 ("Prior decisions of this Circuit that limit unlawful retaliation to actions that affect the terms and conditions of employment[] no longer represent the state of the law.").

### ii.   *Backofen's Conduct*

Jones argues that Backofen's conduct towards her between 2021 and 2022 involved numerous adverse actions in that Backofen frequently monitored her, made unfounded critiques of her, and assigned her unnecessary tasks. (Pl.'s Opp'n at 20; *see also* Am. Compl. ¶¶ 81–86.)[13] Brookhaven argues that none of the allegations concerning Backofen's conduct towards Jones between 2021 and 2022 establish an adverse employment action. (Def.'s Br. at 17.)

Considered individually, the specific actions that Backofen is alleged to have taken against Jones may not sufficiently allege a materially adverse employment action to support a Title VII retaliation claim. Nevertheless, in the aggregate, the allegations concerning Backofen's treatment of Jones from 2021 to 2022 plausibly allege that Brookhaven engaged in adverse

---

[13] Jones also argues that these actions led to her psychological distress, which prompted her to seek therapy. (Pl.'s Opp'n at 20; *see also* Am. Compl. ¶ 99.) This allegation concerns Jones's subjective response to Backofen's behavior and is thus not relevant to the determination of whether Backofen's conduct was "materially adverse," which is an objective standard. *Burlington Northern*, 548 U.S. at 68–69 ("We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings."); *Carr*, 76 F.4th at 180.

Brookhaven makes the same error when it argues that "by Plaintiff's own admission, she was not dissuaded" by any of Brookhaven's conduct "as she *did* complain about Defendant's conduct on July 15, 2020, prompting Defendant's investigation, on October 16, 2020, when she filed her EEOC Charge because she was not satisfied with the results of the investigation, and again on March 8, 2022.") (Def.s' Br. at 18.) By contrast, the standard for determining whether employer action is an adverse action supporting a Title VII retaliation claim is whether the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Carr*, 76 F.4th at 179 (citing *Burlington Northern*, 548 U.S. at 68). Moreover, none of the actions that Jones alleges were taken in retaliation for her protected activities occurred prior to October 16, 2020. (*See* Pl.'s Opp'n at 22.)

actions that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination" as required to plead a Title VII retaliation claim. *Carr*, 76 F.4th at 180; *Burlington Northern*, 548 U.S. at 68. Because "alleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct," *Rivera*, 743 F.3d at 25, I address each of the allegations concerning Backofen's conduct toward Jones in turn.

First, the Amended Complaint alleges that Backofen assigned "unnecessary work" to Jones, "such as pulling photography negatives in person when [they] were already available in the online archives." (Am. Compl. ¶ 83.) In *Burlington Northern*, the Supreme Court found that the reassignment of duties *can* constitute a retaliatory adverse action because "[c]ommon sense suggests that one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable." *Burlington Northern*, 548 U.S. at 70–71. The Supreme Court found that a jury could reasonably conclude that a reassignment of duties was an adverse action where the plaintiff presented evidence that the new duties imposed were "by all accounts more arduous and dirtier" and less prestigious than her previous duties, and that the previous duties were considered "a better job" for which other employees "resented" plaintiff. *Id.* at 71. Brookhaven relies on two cases from this district in which courts found that additional work assignments or increased workload did not amount to an adverse action for the purpose of pleading a Title VII retaliation claim: *Brown v. City Univ. of N.Y.*, No. 21-cv-854, 2022 WL 4637818 (E.D.N.Y. Sept. 30, 2022) and *Stern v. State Univ. of N.Y.*, No. 16-cv-5588, 2018 WL 4863588 (E.D.N.Y. Sept. 30, 2018). (Defs.' Br. at 17–18.)

In *Stern*, the court identified the appropriate standard for adverse actions in retaliation claims, but still applied the more narrow standard for adverse actions in discrimination claims when analyzing the increased workload allegation, stating that "Plaintiff has also not pleaded facts that would show that her alleged increased workload . . . *effected a material change in her working conditions*." *Stern*, 2018 WL 4863588, at *16 (emphasis supplied). This reasoning is not persuasive because the Second Circuit has since clarified that the standard for adverse actions in retaliation cases is broader than in discrimination claims. *See Carr*, 76 F.4th at 179.

In *Brown*, the court found that the plaintiff's allegations that she was assigned "additional work" were "the type of minor annoyances that do not constitute adverse employment actions in retaliation claims." 2022 WL 4637818, at *16. Similarly, in *Carr*, the Second Circuit found that an employee's "being assigned additional projects" was not an adverse employment action. 76 F.4th at 180.

The allegations of the Amended Complaint are akin to the allegations made in *Brown*, and not those made in *Burlington Northern*. The Amended Complaint does not allege that "[Jones's] workload was materially disproportionate" compared to that of her coworkers. *Brown*, 2022 WL 4637818, at *16. Nor does the Amended Complaint allege how frequently Backofen assigned "unnecessary work" to Jones. *Id.*; Am. Compl. ¶ 83. Unlike the pleadings in *Burlington Northern*, the Amended Complaint does not allege that the "unnecessary work" Jones was assigned were more arduous or less prestigious than any tasks she was previously required to perform. Without more, the allegation that Backofen assigned Jones "unnecessary work" is, on its own, insufficient to plead an adverse employment action as required for a Title VII retaliation claim.

Second, the Amended Complaint alleges that Backofen frequently monitored Jones by standing over her as she worked and "look[ing] at his watch to monitor [Jones's] time when she left and returned from a lunch break or went to the bathroom." (Am. Compl. ¶¶ 84, 86.) As Brookhaven points out, courts in the Second Circuit have found that allegations of an employer's increased monitoring of an employee while at work do not on their own constitute an adverse employment action for the purpose of a Title VII retaliation claim. *See Stern*, 2018 WL 4863588, at *16 (finding that allegations of "excessive monitoring and scrutiny of [an employee's] timesheets" was not an adverse action); *Feliciano v. City of New York*, No. 14-cv-6751, 2015 WL 4393163, at *9 (S.D.N.Y. July 15, 2015) (allegations of "excessively scrutinizing [plaintiff] in the workplace" did not constitute a "*materially* adverse action"); *Fahrenkrug v. Verizon Servs. Corp.*, 652 F. App'x 54, 57 (2d Cir. 2016) (allegations that an employer was "monitoring or recording the computer [an employee] used at work . . . d[id] not show an adverse employment action" for a retaliation claim); *Laudadio v. Johanns*, 677 F. Supp. 2d 590, 613 (E.D.N.Y. 2010) ("[R]eprimands . . . and excessive scrutiny do not constitute adverse employment actions."). Thus, the allegation that Backofen monitored Jones's work does not on its own establish an adverse employment action.

Third, the Amended Complaint alleges that Backofen "frequently criticized [Jones's] work and stated she did not know what she was doing." (Am. Compl. ¶ 85.) In *Carr*, the Second Circuit found that "diminished performance ratings" and an employer's "hostile tone in emails" did not allege an adverse employment action for the purpose of a Title VII retaliation claim. *Carr*, 76 F.4th at 180. In *Vega*, however, the Second Circuit found that "[a] negative evaluation, or the threat of a negative evaluation, while not an adverse employment action that affects terms and conditions of employment, might dissuade a reasonable worker from making or supporting a

charge of discrimination." *Vega*, 801 F.3d at 92. In line with the Second Circuit's holding in *Carr*, an employer's criticism of an employee's work, without more, does not constitute an adverse employment action as required to plead a Title VII retaliation claim. *See Carr*, 76 F.4th at 180. The Amended Complaint does not allege that Jones received a poor performance evaluation or the threat of one, but only generically alleges that "Backofen frequently criticized Plaintiff's work and stated she did not know what she was doing." (Am. Compl. ¶ 85.) This alleged conduct, on its own, does not constitute an adverse employment action.

Finally, the Amended Complaint alleges that Backofen "increased his discriminatory and harassing behavior" towards Jones (*id.* ¶ 82) following her December 1, 2020 email to Gordon stating that she was not being treated equally to her similarly situated coworkers (*id.* ¶ 74); her filing an EEOC charge on October 16, 2020 (*id.* ¶ 71); her July 15, 2020 request to Gordon to address her request to work remotely "like her similarly situated White coworkers" (*id.* ¶ 43); her contact with Genzer on July 10, 2020 asking why her remote work request was not approved (*id.* ¶ 36); and her July 7, 2020 request to Backofen for a remote work position similar to that of her colleagues (*id.* ¶ 26). This allegation is not, however, a factual allegation, but a conclusory statement that does not sufficiently allege an adverse action on its own or in combination with other allegations.

While each of the allegations concerning Backofen's conduct toward Jones does not individually constitute an adverse employment action, when drawing all inferences in favor of Jones, these allegations in the *aggregate* might have plausibly "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Carr*, 76 F.4th at 180 (citing *Burlington Northern*, 548 U.S. at 68); *see Rivera*, 743 F.3d at 25 ("[E]ven trivial acts may take on greater significance when they are viewed as part of a larger course of conduct."); *see also Laudadio*,

677 F. Supp. 2d at 613 (finding that "a reasonable juror could find that the alleged acts taken

collectively were not merely slights or justified reprimands, but materially adverse actions," even

where the acts taken individually "may be insufficient to establish a materially adverse action").

Thus, the Amended Complaint's allegations concerning Backofen's conduct between 2021 and

2022 sufficiently allege, in the aggregate, an adverse action as required to plead a Title VII

retaliation claim.

### iii.   Geata's Conduct

The Amended Complaint also alleges that Jones's coworker, Geata, took the following

actions in retaliation against her for her protected activity:

- on February 28, 2022, Geata "refused to acknowledge" Jones when she said "Good Morning" while walking to her office (*id.* ¶ 90);

- on March 1, 2022 and again on March 2, 2022, Geata "slammed a door in [Jones's] face when she entered a common space" (*id.* ¶¶ 91–92);

- on March 4, 2022, Geata "aggressively left the copy room" when Jones entered the room, and "slammed the door angrily on his way out" (*id.* ¶ 93);

- on March 10, 2022, Geata made a false report to the Union Representative that Jones had "intentionally attempted to knock Geata over" the previous day. (*Id.* ¶ 97.)

Brookhaven is correct that none of these actions constitute an adverse employment

action. (*See* Def.'s Br. at 17.)[14] Although Gaeta's alleged conduct towards Jones may be rude or

indicate a personality conflict, it does not rise to the level of a materially adverse action that can

---

[14] Brookhaven also argues that Jones has waived any argument that Geata's alleged conduct supports her retaliation claim because she did not address Brookhaven's arguments regarding Geata in her opposing brief. (Def.'s Reply at 8 n.3) While Jones's brief did not provide much argument about Geata's conduct, Jones did argue that she was subjected to Geata's conduct because of her protected activities. (*See* Pl.'s Opp'n at 24.) Accordingly, I decline to consider the argument waived.

support a Title VII retaliation claim. *See Millea*, 658 F.3d at 165 ("Petty slights, minor annoyances, and simple lack of good manners will not give rise to actionable retaliation claims." (citing *Burlington Northern*, 548 U.S. at 68)); *see also McGrier v. Cap. Cardiology*, No. 20-cv-1044, 2022 WL 2105854, at *17 (N.D.N.Y. June 10, 2022) (finding that an allegation that the plaintiff's coworker ignored the plaintiff when he tried to say hello did not constitute a materially adverse action for the purposes of a retaliation claim); *Garcia v. N.Y.C. Health & Hosps. Corp.*, No. 19-cv-997, 2019 WL 6878729, at *9 (S.D.N.Y. Dec. 17, 2019) (plaintiff's "claim that his co-worker filed a formal complaint falsely accusing him of becoming irate and pushing her . . . does not qualify as an adverse action by his employer . . . because he has not pled that the coworker was his supervisor or had decision-making authority over him).[15] Even considering all of Geata's actions together, the allegations concerning Gaeta's conduct toward Jones do not allege a materially adverse action as required to plead a Title VII retaliation claim.

C. Causation

Brookhaven argues that even if the Amended Complaint sufficiently alleges any materially adverse action that could support Jones's retaliation claim, it fails to allege facts supporting a causal connection between any adverse action and Jones's protected activities. (Def.'s Br. at 19.) In opposition, Jones asserts that each of the alleged retaliatory actions is causally connected to Jones's protected activities because these adverse actions occurred "close in time" to the protected activities and because she was "subjected to disparate treatment." (Pl.'s Opp'n at 21–22.)

---

[15] The Amended Complaint alleges "upon information and belief" that Geata was instructed to retaliate against Jones by Backofen, her supervisor. (Am. Compl. ¶ 89.) As discussed below, however, I cannot assume this allegation to be true because this assertion is not based on any well-pled factual allegations. *See infra* note 16.

To establish causation, the fourth element of a Title VII retaliation claim, a "plaintiff must plausibly allege that the retaliation was a "but-for" cause of the employer's adverse action" meaning that "the adverse action would not have occurred in the absence of the retaliatory motive." *Vega*, 801 F.3d at 90 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). "A causal connection in retaliation claims can be shown either . . . directly, through evidence of retaliatory animus directed against the plaintiff by the defendant" or indirectly, "by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015); *see also Rivera v. JP Morgan Chase*, 815 F. App'x 603, 608 (2d Cir. 2020) (a plaintiff can establish but-for causation "indirectly by timing," by alleging "protected activity followed closely in time by adverse employment action.") (quoting *Vega*, 801 F.3d at 90).

The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Littlejohn*, 795 F.3d at 319. In *Vega*, the Second Circuit found that the plaintiff sufficiently alleged a causal relationship between his filing and later amending an EEOC charge and his employer's retaliatory actions because the plaintiff alleged that the employer's actions occurred two to three months after the EEOC charge was either filed or amended. *Vega*, 801 F.3d at 92. In *Espinal v. Goord*, the Second Circuit found that the passage of six months between a plaintiff's protected activity and an employer's adverse action was sufficient to establish causation. 558 F.3d 119, 129 (2d Cir. 2009). By contrast, a "gap of sixteen months is too long to support a retaliation claim based solely on a temporal connection." *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016).

Applying this standard, the Amended Complaint sufficiently alleges that Brookhaven's request for Jones to withdraw her EEOC charge and Backofen's conduct toward Jones in 2021 and 2022 were causally connected to Jones's protected activity by alleging that such conduct took place close in time to Jones's protected activities.[16]

### i.  Remote Work Schedule Offer in Exchange for Withdrawing Jones's EEOC Charge

First, the Amended Complaint alleges that, on February 4, 2021, Brookhaven offered Jones a work schedule including three remote days per week in exchange for withdrawing her EEOC charge with prejudice. (Am. Compl. ¶¶ 76–78.) This offer was allegedly made just two months after Jones's December 1, 2020 email to Gordon asserting that she was being treated differently than her white coworkers, and almost four months after she filed a complaint of racial discrimination with the EEOC on October 16, 2020. (Am. Compl. ¶¶ 71, 74, 76–78.) Because the

---

[16] Even if Geata's alleged conduct toward Jones constituted an adverse action, the Amended Complaint fails to plead that it was causally connected to Jones's protected activities through either direct allegations of retaliatory intent or indirectly through allegations that the action was close in time to any alleged protected activity. First, Jones does not provide any factual allegations that would otherwise support the allegation made "upon information and belief" that Backofen showed her EEOC charge to Geata and instructed him to retaliate against Jones. (Am. Compl. ¶ 89.) This allegation is pure speculation and I do not assume it as true when considering Brookhaven's Motion to Dismiss. *Evergreen E. Coop v. Whole Foods Mkt. Inc.*, No. 21-2827, 2023 WL 545075, at *2 (2d Cir. Jan. 27, 2023); *see also Stern*, 2018 WL 4863588, at *18 (declining to consider an allegation made upon "information and belief" that the employer informed the plaintiff's coworker about the plaintiff's EEOC charge where the complaint alleged "no facts to support her belief").

Second, Geata's alleged conduct occurred between February and March 2022, which was more than one year after any of Jones's protected activities. (Am. Compl. ¶¶ 90–98.) Even the earliest of Geata's alleged actions on February 28, 2022 took place fourteen months after Jones's December 1, 2020 email to Gordon reasserting her claim of discrimination. (*Id.* ¶¶ 74, 90.) Without other alleged facts to support causation, this gap of at least fourteen months is too long to raise an inference that Geata's conduct was caused by Jones's protected activity as required to plead a plausible Title VII retaliation claim. *See Riddle*, 640 F. App'x at 79 (finding that a sixteen-month gap was too long to establish causation).

Second Circuit has held that a gap of two and six months between a plaintiff's protected activity and an alleged adverse action sufficiently alleges a causal connection, the Amended Complaint plausibly alleges a causal connection between Jones's protected activities in October and December 2020 and Brookhaven's February 2021 request for Jones to withdraw her EEOC charge. *See Vega*, 801 F.3d at 92 (two to three months); *Goord*, 558 F.3d at 129 (six months).

Brookhaven unpersuasively argues that a gap of more than two months between alleged protected activity and alleged adverse action is too long a time period to plausibly allege a causal connection sufficient for a plausible Title VII retaliation claim. (Def.'s Br. at 20.) Brookhaven relies on district court decisions and fails to acknowledge the Second Circuit's decisions in *Goord*, 558 F.3d at 129 and *Vega*, 801 F.3d at 92, which reached the opposite conclusion. Brookhaven also ignores that only two months elapsed between Jones's December 1, 2020 email to Gordon asserting that she was being treated differently than her white coworkers and Brookhaven's offer that Jones work remotely three workdays per week. (Def.'s Reply at 7; Def.'s Br. at 20.)

### ii. *Backofen's Conduct*

Jones also argues that Backofen's "unfounded critiques" and "increased oversight" of her and "excessive monitoring of her lunch breaks" in 2021 and 2022 were causally connected to her protected activities because they were close in time to those protected activities. (Pl.'s Opp'n at 20; *see also* Am. Compl. ¶¶ 81–86). The Amended Complaint alleges that Backofen "increased his discriminatory and harassing behavior" by frequently critiquing and monitored Jones between 2021 and 2022. (Am. Compl. ¶¶ 82–87.) Jones does not give any specific dates for these actions. Backofen argues that this lack of specificity makes "it is impossible to determine" whether Backofen's conduct was close in time to Jones's protected activity. (Def.'s Br. at 19–

20.) Brookhaven relies on *Dooley v. Jetblue Airways Corp.*, 636 Fed. App'x 16, 19 (2d Cir. 2015), which affirmed the dismissal of a Title VII retaliation claim where the plaintiff failed to set forth any date or time frame in which the alleged adverse actions took place. (Def.'s Br. at 19–20). Unlike *Dooley*, however, the Amended Complaint provides a time frame in which Backofen's alleged conduct occurred; "[b]etween 2021-2022." (Am. Compl. ¶¶ 82–87.) Viewing the allegations of the Amended Complaint in the light most favorable to Jones and drawing all reasonable inferences in her favor, Backofen's alleged conduct in 2021 followed close in time after Jones's October 2020 and December 2020 protected activities. This is because Jones's allegations raise the reasonable inference that Backofen was engaging in this activity throughout 2021, including the beginning of 2021, between one month and a few months after Jones's protected activity occurred. Thus, the Amended Complaint plausibly alleges a causal connection between Backofen's 2021 conduct and Jones's protected activities in October and December of 2020.

Jones additionally alleges that Backofen did not act in this way to any of Jones's coworkers. (*Id.* ¶¶ 82–87.) While thin, these allegations also add further support for an inference of causation between the challenged conduct and Jones's protected activity. *Littlejohn*, 795 F.3d at 319.

### c.  Hostile Work Environment Claim Based on Pervasive Discrimination

Brookhaven argues that Jones has failed to allege a hostile work environment claim based on pervasive racial discrimination. (Def.'s Br. at 20–22.) In response, Jones argues that the allegations in the Amended Complaint state a cause of action for a retaliatory hostile work environment rather than a claim of a hostile work environment based on acts of racial discrimination. (*See* Pl.'s Opp'n at 23–25.) Jones states that "[a]s pled, plaintiff continually and

regularly engaged in protected activity between July 2020, and March 2023, and as a result of her continued complaints, plaintiff was subjected to ongoing adverse actions during that same time period [which] when viewed in the aggregate, amounted to a hostile work environment." (*Id.* at 24.)

Jones does not argue that the Amended Complaint alleges a claim of a hostile work environment based on discrimination. (*Id.*)[17] Accordingly, to the extent that the Amended Complaint may state a claim for a discriminatory hostile work environment, Jones has abandoned that claim by failing to address it in her brief opposing the Motion to Dismiss. *See Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 257 (2d Cir. 2024) (finding that a plaintiff "abandoned . . . claims" that she failed to argue in her response to a motion for summary judgment); *see also Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) ("[W]hen a party fails adequately to present arguments" in a brief, a court may properly "consider those arguments abandoned . . . .") (citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004)).

## CONCLUSION

For the reasons stated above, Brookhaven's Motion to Dismiss (ECF No. 16) is granted in part and denied in part. The Motion is granted as to Jones's Title VII racial discrimination claim, the portion of Jones's retaliation claim relating to the conduct of Jerry Gaeta, and as to the claim of hostile work environment based on racial discrimination. The Motion is denied as to Jones's retaliation claim based on Brookhaven's alleged February 2021 offer of remote work in

---

[17] Jones cites the standard for a hostile work environment claim based on discriminatory conduct, but this appears to be in error, as Jones raises no argument that her hostile work environment claim was based on discriminatory actions. (Pl.'s Opp'n at 23.)

exchange for withdrawal of the EEOC charge and based on Richard Backofen's alleged conduct

between 2021 and 2022. The Motion is also denied as to Jones's claim of hostile work

environment based on retaliation.

Dated: Central Islip, New York
September 10, 2024

_/s/ Nusrat J. Choudhury_
NUSRAT J. CHOUDHURY
United States District Judge
